UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA Plaintiff

v. Criminal Action No. 3:26-CR-93-RGJ

DESHAWN PARKER Defendant

* * * * *

**MEMORANDUM OPINION & ORDER**

The United States moves to revoke release order [DE 16] pursuant to 18 U.S.C. § 3145(a)(1). For the reasons stated below, the United States's motion [DE 16] is **DENIED**. The deadline for Defendant Deshawn Parker ("Parker") to respond has not yet passed. However, the Court will adjudicate this matter prior to receiving a response, given the constraints on Parker's liberty and because Parker will not be prejudiced by the Court's decision.

## I. BACKGROUND

A criminal complaint was issued for Parker on August 2, 2025. [DE 1]. Parker was subsequently indicted with one count of possession of a firearm by a prohibited person on August 5, 2026. [DE 3]. The indictment alleges that Parker "knowingly possessed . . . [a firearm] . . . with knowledge that he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year" in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). [*Id.*]. Parker appeared before a United States Magistrate Judge and on September 24, 2026, the Court conducted a detention hearing. At the conclusion of the hearing, the Court ordered the defendant released on an unsecured appearance bond of $25,000 with conditions of home incarceration with location monitoring. [DE 12].

At the time of the detention hearing, it was established that this is not a presumption case under 18 U.S.C. § 3142(e). Parker was not charged with any offenses listed in 18 U.S.C. § 3142(f)(1) and 18 U.S.C. § 3142(e)(3) did not apply.

Parker is 46 years old, was born in Kentucky, and has lived in Louisville, Kentucky for his entire life. Other than periods of incarceration or custody, Parker has consistently resided at his aunt's residence. Parker has four siblings, including two sisters and two brothers with whom he has regular contact. All reside in Kentucky.

In 2002, Parker was arrested in connection with a gang-related homicide. According to the Pretrial Services Report (PSR)[1] prepared by the United States Probation Office ("USPO") pursuant to 18 U.S.C. § 3154(1), Parker was convicted and sentenced for "Manslaughter 1st Degree," "Complicity to Assault 2nd," and "Complicity to Tampering with Physical Evidence." Prior to incarceration, Parker was a "member of the Victory Park Crips (Louisville)." Parker was incarcerated until September 4, 2018.

While incarcerated, Parker obtained his GED as well as a masonry certification. After his release, and at the time of his arrest in this matter, Parker has worked with the Goodwill "Pivot to Peace" program as a Team Lead. This job requires Parker to work in violent Louisville neighborhoods, seeking out high-risk teens to help guide away from gun violence and toward education, employment, and counseling.

The PSR recommended detention and assessed that Parker poses a risk of danger to the community due to Parker's "History/Charge Involving Violence/Domestic Violence" and "Criminal History." The PSR found no condition or combination of conditions to reasonably

[1] The PSR was prepared based on interviews with Parker, as well as his mother, Sandra Parker, and other public records.

assure the safety of the community. The PSR reported no known factors indicating the Parker poses a risk of nonappearance.

At the detention hearing, the United States asserted that detention was appropriate based on dangerousness because (1) Parker's criminal history established his membership in organized crime, specifically the Victory Park Crips, (2) the evidence on this current charge includes a video recording showing that Parker and an associate disposed of firearms in a trash can while under police surveillance, demonstrating his knowledge that possession of the firearm(s) was unlawful, (3) Parker's employment places him in high crime neighborhoods around teens and potentially gang-affiliated individuals, and (4) the seriousness of the charged offense weighed in favor of finding that Parker was a danger to the community. As for the risk of nonappearance, the United States did not substantially contest this issue and the only supporting evidence was a bench warrant issued years before his original incarceration.

Parker argued that the United States had failed to meet its burden by clear and convincing evidence to show either risk of nonappearance or dangerousness. With respect to the risk of dangerousness, Parker's counsel emphasized that the series of indictments the United States relies on all relate to an incident that took place over two decades ago. Further, since his release in 2018, Parker has no criminal history until the events giving rise to this matter, and is employed counseling teens to avoid the same conduct that led to his incarceration.

The Magistrate Judge held the United States failed to meet its burden to demonstrate sufficient risk of failure to appear or dangerousness to the community to warrant detention and instead released Parker on a $25,000 unsecured appearance bond with several additional conditions, including (1) submitting to supervision by and reporting to the U.S. Probation Office, (2) prohibiting possession of a firearm, destructive device, or other weapon, (3) participating in a

home incarceration location monitoring program, (4) submitting to location monitoring technology as directed by the US Probation Office, (5) and other reporting requirements. [DE 12]. In particular, the Magistrate Judge found that home incarceration mitigated any risks posed by the nature and location of Parker's position in the "Pivot to Peace" program.

The Magistrate Judge granted the United States' motion to stay the release order until September 30, 2026. On September 29, 2026, the United States moved to revoke Parker's release order, arguing that it has proven risk of dangerousness. [DE 16].

## II. DISCUSSION

### 1. Standard

18 U.S.C. § 3145(a) governs review of release orders and provides that "[i]f a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . [t]he motion shall be determined promptly." This Court reviews a Magistrate Judge's release or detention order *de novo*. *United States v. Demarcus Bristuan Fitzhugh*, No. 16-MJ-30364, 2016 WL 4727480, at *2 (E.D. Mich. Sept. 12, 2016) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir.1985)). On review, this Court engages "in the same analysis, with the same options, under § 3142 as the magistrate judge." *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) (citing *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985)).

18 U.S.C. § 3142 governs the release or detention of a federal defendant pending trial. It provides four options: (1) release on personal recognizance or after execution of an unsecured appearance bond, (2) release on a condition or combination of conditions, (3) temporary detention to permit revocation of conditional release, deportation, or exclusion, and (4) detention. 18 U.S.C.

§ 3142(a). A defendant must be detained pending trial if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *see also United States v. Hansen*, 108 F. App'x 331, 332 (6th Cir. 2004) (noting that the requirement is not one of "guarantee," but instead "reasonable assurance"). To merit an order of detention, the United States must prove either (1) that the defendant poses a serious risk of flight, *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004); or (2) that he poses a risk to the safety of others and the community, *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010) (citing 18 U.S.C. § 3142(f)(2)(B)).

In determining whether there are conditions of release that will reasonably assure appearance of the defendant and safety of the community, the district court considers four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g)(1)-(4). A judge's finding that no set of conditions will reasonably assure the appearance of the person and/or the defendant poses a threat to the safety of any other person in the community must be supported by clear and convincing evidence. *Id.* § 3142(f)(2)(B).

Section 3142(c)(1)(B) provides that, if a judicial officer determines the pretrial release of a defendant will endanger the safety of the community, the court must use "the least restrictive further condition, or combination of conditions" to reasonably assure the safety of the community. The statute goes on to provide an illustrative list of the types of conditions that the court may use to effect this purpose. 18 U.S.C. § 3142(c)(1)(B)(i)–(xiv); *United States v. Spivak*, 555 F. Supp. 3d 541, 549 (N.D. Ohio 2021).

**2. Motion to Revoke Release Order**

The Magistrate Judge found that the United States failed to meet it burden for detention and on a *de novo* review this Court agrees.[2]

To be sure, several factors support a finding that Parker poses a risk of dangerousness to others and the community. Parker's criminal and personal history includes a murder conviction and prior gang affiliation. Taken together with the serious nature and circumstances of the crime charged, which is supported by credible video evidence, the Court has no trouble finding that Parker should not be released on his own recognizance. The Court also agrees with the Magistrate Judge that allowing Parker to continue in his present employment would constitute too high of a risk considering the nature of the crime charged. Thus, less restrictive measures such as curfew, or home detention, would not be adequate in the Court's view.

---

[2] In the Motion to Revoke Release Order [DE 16], the United States does not argue that Parker poses a flight risk. Therefore, the Court only considers whether detention is justified by ensuring the safety of the community.

However, the United States has not shown by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e). Indeed, the appearance bond entered by the Magistrate Judge mitigates the United States's concern of dangerousness as it prohibits Parker from leaving his residence "except for medical necessities and court appearances or activities specifically approved by the court," and further prohibits Parker from possessing a firearm, weapon, or being "in a residence or vehicle where a firearm or other weapon is present." [DE 12 at 29]. These measures will be enforced both through location monitoring technology and by regular reporting to the USPO. [*Id.*]. As such, there is a condition, or combination of conditions, which would mitigate risk to the community from Parker's potential dangerousness from possessing a firearm.

a. Factors Under Section 3142(g)(1)

As to 18 U.S.C. § 3142(g)(1), the nature and circumstances of the offense charged, Parker is charged with possession of a firearm by a prohibited person, a serious offense. Video surveillance evidence shows Parker and another convicted felon placing firearms in a trash can at Victory Park in Louisville, Kentucky. [DE 16 at 42]. Although Parker is presumed innocent of the crime charged, the nature of the charge, circumstances surrounding his arrest, and criminal history do support a finding of dangerousness. But as discussed below, Parker's criminal history relates entirely to conduct in or before 2002. And this history must be balanced against Parker's otherwise clean record after incarceration. The Court is not persuaded that the prescribed conditions of release are insufficient to mitigate the risk that Parker may possess a firearm or engage in other dangerous criminal activity.

As to 18 U.S.C. § 3142(g)(2), the weight of the evidence, this factor specifically refers to the weight of the evidence of dangerousness and not the weight of the evidence of guilt. *Stone*,

608 F.3d at 948. Here, the only evidence that Parker might continue be a danger to the community after his release from incarceration is the evidence in this case that he possessed a firearm. The United States appears to suggest—based on the location of the incident, Victory Park, and his association at the time with another felon and Victory Park Crip member—that Parker is currently still affiliated with the Victory Park Crips. [*See* DE 16 at 44]. The United States did not make this argument at the detention hearing before the Magistrate Judge, although the Magistrate Judge was aware of Parker's past involvement with the Victory Park Crips. But at least an equally plausible, non-incriminating explanation for these circumstances is provided in the PSR, which reports that "Parker was working with the Goodwill Pivot to Peace Program at the time of his arrest." [*Id.* at 45 (United States citing PSR)]. As part of that job, Parker was required "to work in the violent neighborhoods in Louisville and seek out high-risk teens to intervene in gun violence and guide them toward education." [*Id.*]. And while the Court agrees that the weight of the evidence shows that Parker should not continue in this position while these charges are pending, the Court finds Parker's potential dangerousness is mitigated by the conditions set forth above.

As to 18 U.S.C. § 3142(g)(3), the Court considers the history and characteristics of the defendant which include a wide range of factors such as the defendant's character, family ties, employment, financial resources, criminal history, and whether, at the time of the current offense or arrest, the defendant was on release pending trial. As discussed herein, Parker has lived in Louisville his entire life, is employed in a program intended to reduce gun violence, lives with his aunt, and has demonstrated strong family ties to the community. He has no reported history of mental health treatment, substance abuse history, or substance abuse treatment. Moreover, he was not on any type of pretrial release at the time of the current offense.

The United States emphasizes the serious nature of Parker's past convictions and history of gang affiliation. Yet the United States concedes that the "facts and circumstances of his prior convictions" took place in "July 2000." [DE 16 at 44–45]. Without diminishing the seriousness of his convictions, the Court must still weigh the passage of time and Parker's post-incarceration history of law-abiding conduct. *United States v. Young*, No. CR 24-20174, 2024 WL 2817539, at *4 (E.D. Mich. June 3, 2024) ("Despite this troubling history, the Court declines to give these convictions much weight given their age, the most recent being from over twenty years ago in 2002."); *United States v. Staudohar*, No. 1:21-CR-00533, 2021 WL 4340069, at *3 (N.D. Ohio Sept. 23, 2021) ("His criminal history of violent offenses raises concern, but the most recent such charged offense occurred twenty-three years ago with the majority occurring over thirty years ago. . . . At most, the record shows that the United States has shown a risk to the safety of others and the community by a preponderance of the evidence. But federal law sets a higher standard."). In doing so, the Court finds that the United States has not shown by clear and convincing evidence that the conditions described herein are inadequate.

As to 18 U.S.C. § 3142(g)(4), the nature and seriousness of the danger to any person or the community that would be posed by Parker's release must be considered. Again, the Court finds that any arguments raised by the United States as to dangerousness are mitigated by the conditions set forth in the appearance bond.

## III. CONCLUSION

The Court has reviewed the evidence presented at the detention hearing and listened to the hearing in its entirety. For the reasons explained above, the Court does not find that clear and convincing evidence exists that there is no condition or set of conditions of release that can

adequately protect the community. Accordingly, **IT IS ORDERED** that the United States's Motion to Revoke Release Order [DE 16] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

October 1, 2026

Cc: Counsel of Record, USP, USM